**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 18 2013, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

**ELLEN N. MARTIN**
DCS, Greene County
Bloomfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE INVOLUNTARY    )
TERMINATION OF THE PARENT-CHILD    )
RELATIONSHIP OF:    )
     )
P.K. (Minor Child),    )
     )
  and    )
     )
D.K. (Mother),    )
     )
    Appellant-Respondent,    )
     )
       vs.    )    No. 28A01-1306-JT-260
     )
THE INDIANA DEPARTMENT OF    )
CHILD SERVICES,    )

)
)

---

APPEAL FROM THE GREENE CIRCUIT COURT
The Honorable Erik C. Allen, Judge
Cause No. 28C01-1302-JT-1

---

**December 18, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this termination of parental rights appeal, appellant-respondent, D.K. (Mother), challenges the decision of the juvenile court terminating her parental rights with regard to her daughter, P.K. (Child), born August 18, 2010.[1] The sole allegation that Mother makes is that the appellee-petitioner Department of Child Services (DCS) presented insufficient evidence to show that the termination of Mother's parental rights is in P.K.'s best interest.

We conclude that the DCS established that termination of Mother's parental rights was in P.K.'s best interests. Thus, we find that there was sufficient evidence to support the termination of Mother's parental rights, and we affirm the judgment of the juvenile court.

---

[1] P.K.'s father was not named in the termination petition and is not a party to this appeal.

## FACTS

P.K. tested "marijuana positive" at birth, following the DCS's receipt of a report that Mother had been smoking marijuana. Appellant's Br. p. 4. On August 20, 2010, two days after P.K.'s birth, DCS case manager Kathy Lawrence met with Mother at the hospital. Mother told Lawrence that she had smoked marijuana periodically throughout her pregnancy because she was depressed.

Although P.K. was not removed from Mother's care at the time, Mother agreed to stop smoking marijuana and participate in counseling services through the DCS. Although Mother satisfied these conditions initially, the DCS filed a Child in Need of Services (CHINS) petition on February 8, 2012, alleging that Mother was continuing to smoke marijuana and abuse other drugs. Moreover, it was determined that when the police had stopped Mother in her vehicle, several syringes containing amounts of liquid used for bath salts were also discovered. P.K. was in Mother's vehicle at the time. As a result of this incident, P.K. was removed from Mother and placed in foster care.

P.K. was subsequently adjudicated a CHINS, and at a dispositional hearing on May 7, 2012, the trial court ordered Mother, among other things, to successfully complete an extended substance abuse program, maintain sobriety, and find steady employment and housing. The juvenile court also decided that P.K. should remain in foster care.

Mother underwent substance abuse assessment and was diagnosed with hallucinogen abuse, cannabis dependence, and generalized anxiety disorder. Mother completed a portion of her substance abuse treatment program, but had to restart the remainder of the program because of her nonattendance at the sessions. Mother also continued to test positive for various illegal substances throughout the CHINS proceedings.

The DCS filed a petition to terminate Mother's parental rights on February 15, 2013. Karen Roach, a case manager with the DCS, testified that Mother has "zero control" over certain drugs and that she cannot "stop herself" if certain drugs are offered to her. Tr. p. 187. Mother also admitted taking some of the drugs simply because "she had never tried them before." Id. at 100.

Mother claimed that she wanted to remain sober, and her plan was to isolate and stay away from others. However, none of the caseworkers and therapists agreed with Mother's plan because it was not an effective way to deal with addiction.

DCS caseworker Tara Merriman, who worked with Mother from February 2012 until March 2013, also testified at the termination hearing that Mother did not take sobriety seriously because Mother began using other drugs during that period. Mother had also been arrested for theft when she was "high" on synthetic drugs. Appellant's App. p. 4.

Mother also failed to find steady employment, could not budget her finances, and eventually became homeless. During the pendency of the case, Mother had moved nearly

twenty times. Mother also admitted that she would rather "self-medicate" with illegal substances than follow through with recommended treatment plans. Tr. p. 193.

Sometime in January 2013, Mother attempted suicide with a knife, but someone took the knife away before she could inflict injury. This incident occurred just prior to P.K.'s visit with Mother. Although Mother showed some progress in therapy, she continued to test positive for illegal drugs. She also missed many scheduled visits with P.K. While Mother began to show improvement with her parenting skills and the caseworker did not express concern with unsupervised visits, Mother again tested positive for illegal drug use in February 2013. As a result, the DCS returned Mother to supervised visits with P.K.

Lesa Corwin, P.K.'s court appointed special advocate (CASA), became concerned that Mother had just started to take her circumstances seriously in February 2012, because Mother had fourteen months to participate in therapy and make substantial changes. However, because Mother was not participating in the DCS's services, Corwin feared that Mother would not be able to live on her own.

The therapists and caseworkers also believed that P.K. needed a drug-free positive environment. Corwin believed that it would be unfair for P.K. to have to wait for Mother to improve. Corwin and the caseworkers all believed that termination was in P.K.'s best interests because of Mother's ongoing drug use, lack of participation in the services offered by the DCS, and her history of drug relapses. Corwin believed that Mother was placing her own interests before those of P.K.'s.

5

The DCS had a plan for P.K.'s adoption that Corwin and the caseworkers supported.[2] While P.K.'s former foster mother attempted to assist Mother, she observed that P.K. still needs structure, routine, a positive example, and that isolation, as contemplated by Mother, would not be good for P.K.

After hearing the evidence, the juvenile court granted the DCS's petition to terminate Mother's parental rights as to P.K. Mother now appeals.

## DISCUSSION AND DECISION

### I. Termination of Parental Rights—Standard of Review

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to raise their children. Troxel v. Granville, 530 U.S. 57, 65 (2000); Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). But parental rights are not absolute and must be subordinated to the child's interest in determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 264–65 (Ind. Ct. App. 2004). Thus, "parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265. The purpose of terminating parental rights is not to punish parents but to protect their children. In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

---

[2] The trial court observed that the DCS has a satisfactory plan for the care and treatment of P.K., which is reunification with the father, if possible. If that is not possible, P.K. would be adopted by her current foster parents. Appellant's App. p. 7.

When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment below. Id.

Here, the juvenile court made specific findings of fact and conclusions of law in its order terminating parental rights. Where the juvenile court enters specific findings and conclusions, we apply a two-tiered standard of review. Bester, 839 N.E.2d at 147. We first determine whether the evidence supports the findings, and then whether the findings support the judgment. Id. We will not set aside the juvenile court's judgment unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). A judgment is clearly erroneous when the evidence does not support the findings, or the findings do not support the result. See id.

The elements that the DCS must allege and prove by clear and convincing evidence to effect the termination of parental rights are set forth in Indiana Code section 31-35-2-4(b)(2), which provides:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

7

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child. I.C. § 31-35-2-4(b)(2).

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, which requires that only one of the sub-elements, under subsection (B), be proven true by clear and convincing evidence. In re L.S., 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

II.  Sufficiency of the Evidence as to Termination—Child's Best Interests

As noted above, Mother challenges only the juvenile court's conclusion that the termination of her parental rights was in P.K.'s best interest.  Specifically, Mother argues that even though she admits to being a drug addict, she remained "drug free" for various periods between the time of P.K.'s removal and the termination hearing.  Moreover, Mother contends that she always placed P.K. as "top priority" during visits, her parenting was consistent, and she "was concerned about her daughter overall and anytime."

8

Appellant's Br. p. 11. As a result, Mother contends that the DCS failed to prove that terminating her parental rights was in her daughter's best interest.

In determining what is in a child's best interest, the juvenile court is required to look beyond the factors identified by the DCS and to consider the totality of the evidence. McBride v. Monroe Cnty. Office of Family and Children, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the trial court must subordinate the interests of the parent to those of the child. Id. The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Id. Moreover, we have previously held that the recommendations of the case managers and the CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. In re J.S., 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

In this case, Mother's therapist, caseworkers, and CASA all testified that Mother required ongoing treatment to address her mental health and substance abuse issues. Even though Mother acknowledged her addiction, she continued to use illegal drugs. Tr. p. 40. She did not complete her drug treatment program, missed sessions, and did not always submit to drug screens because she was "high" on several occasions. Id. at 34-35, 37, 41, 80-81. In fact, Mother's longest period of sobriety during the pendency of the proceedings was two months. Id. at 98-99, 100.

The evidence also showed that Mother used various drugs because "they were there," she had not tried them before, or she just wanted to see what it was like. Tr. p. 39,

9

59, 100, 122, 201. Although Mother claimed that she desired to be sober, she wanted to isolate herself from others and withdraw—a plan that her therapists and caseworkers condemned. Mother would not be able to establish a support system or develop coping skills if she engaged in this conduct.

The evidence further established that Mother did not consistently visit P.K. after she had been removed, and Mother was hostile toward the DCS providers. DCS Ex. 1. In fact, in an approximate two month period, Mother missed five scheduled visits with P.K. Id. During one particular visit to Mother's residence in February 2012, Mother became angry with the caseworker and P.K. was not clean. P.K. also had dried food in her hair, and was disheveled. Tr. p. 13-14.

Mother stayed at nearly twenty different places while the CHINS case was pending and was unable to obtain and maintain stable housing. As noted above, Corwin was concerned that Mother had not taken her role as a parent seriously until she was appointed to participate in the case in 2012. Corwin realized that Mother had nearly fourteen months to participate in therapy, receive services, and make changes. However, when given the choice between her child and drugs, the evidence established that Mother chose drugs. As noted above, Corwin did not believe that Mother would be able to sustain herself. Tr. p. 170. Corwin and Mother's case managers also believed that P.K. requires a stable, safe, and drug-free environment and permanency.

Corwin testified that termination was in P.K.'s best interests in light of Mother's ongoing drug use and history of relapses. As noted above, Corwin believed that Mother was placing her own interests above those of her child. Tr. p. 173.

At least one of the case managers believed that Mother has never been able to understand the impact that her drug use has on her ability to parent, relationship decisions, employment, and housing issues. Moreover, the undisputed evidence established that Mother has failed to comply with the dispositional orders in the CHINS case.

Under these facts and circumstances, we conclude that the juvenile court properly found that the DCS proved by clear and convincing evidence that termination of Mother's parental rights was in P.K.'s best interest. As a result, we decline to set aside the termination order on this basis.

The judgment of the juvenile court is affirmed.

NAJAM, J., and CRONE, J., concur.